IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAMON HERNANDEZ, | Case No. 5:05-cv-02993-RMW |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JOHN SOTO,[1] Warden, California State Prison, Los Angeles County, | |
| Respondent. | |

Petitioner Ramon Hernandez ("Hernandez") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he was denied due process and effective assistance of counsel during a jury trial that resulted in his conviction of two counts of committing a lewd act on a child under the age of fourteen. For the reasons set forth below, the petition for writ of habeas corpus is denied.

## I. FACTUAL BACKGROUND[2]

Diana E. ("Diana") is the mother of three children, R.E., C.E., and "Jane Doe" ("Jane"). In June 1999, the children told her that a man down the street had been paying them and other

---

[1] John Soto, the current warden of the California State Prison, Los Angeles County, is substituted as the defendant in this action in place of his predecessor. *See* Fed. R. Civ. P. 25(d).

[2] This factual background is taken from the unpublished opinion of the California Court of Appeal denying Hernandez's direct appeal and petition for writ of habeas corpus following his conviction. *See People v. Hernandez*, Case Nos. A090177, A102598, 2004 WL 541176, at *1-3 (Cal. App. 1st Dist. Feb. 6, 2004).

Case No. 5:05-cv-02993-RMW
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1  neighborhood children to do chores. On June 28, 1999, Diana instructed Jane, then age nine, to give
2  the man Diana's telephone number so that he could call her and explain himself. Jane left and
3  returned about twenty minutes later with the man – Hernandez – who said that he paid kids to do
4  chores for him such as taking out the garbage and sweeping. Later that day, Diana heard Jane's
5  older sister by two years, C.E., telling Jane not to say anything. When Diana asked what they were
6  talking about, Jane said that when she was at Hernandez's house he locked the door, tried to kiss
7  her, and tried to put his hand down her pants. Diana called the police.

8        Police Officer Steven Bias testified at trial that he spoke with Diana, C.E., and Jane on June
9  28, 1999. Jane told him that: she had gone to Hernandez's apartment earlier that day with her older
10 sister, C.E.; C.E. had left her alone with Hernandez; Hernandez had put his hand down the front of
11 her bathing suit bottoms and felt around; after C.E. returned both girls stayed at Hernandez's
12 apartment for a short time; and Hernandez then had accompanied the girls back to their apartment.
13 Jane also said that she had been at Hernandez's apartment on the previous day, June 27, and that
14 when she was leaving Hernandez had kissed her and grabbed her buttocks.

15       Jane testified that: she had been to Hernandez's apartment six or seven times; on the day
16 before she spoke to the police, she went to Hernandez's apartment wearing shiny pink lipstick; he
17 said he liked the lipstick and wanted some of it on him and then he kissed her; as they were walking
18 out of the room where Hernandez kept his money, he squeezed her "butt"; he had squeezed her
19 buttocks about four times previously; she was uncomfortable with Hernandez's touching her, but
20 she did not tell her mother; she told her friends about the touching, and they said not to tell anyone
21 because they wanted to continue getting money from Hernandez. Jane testified that on the day she
22 spoke to the police, she went to Hernandez's apartment to give him her mother's telephone number;
23 while she was standing at the kitchen table writing down the telephone number, Hernandez stood
24 behind her, put his arms on the table on either side of her, and then put a hand down her bathing suit
25 bottoms and rubbed her "privates" for about thirty seconds. Jane told him that she heard her mother
26 calling her, at which point Hernandez stopped touching her and told her not to tell anyone.

27       Jane's older sister, C.E., testified that on the day before they talked to the police, she and
28 Jane went to Hernandez's house; Hernandez gave her (C.E.) three dollars; Jane told her that

2

Case No. 5:05-cv-02993-RMW
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1  Hernandez had touched her; C.E. did not believe Jane; and she told Jane not to say anything to their
2  mother because C.E. wanted to keep getting money from Herndandez.

3        Ricky V. ("Ricky"), who was twenty-two years old at the time of trial, testified that in May
4  1987, when he was ten years old, he had lived near Hernandez; Hernandez had many kids over to
5  his house; Ricky went to Herndandez's house three or four times; and Hernandez gave him money,
6  candy, and cookies. Ricky said that the first time he went to Hernandez's house, Hernandez showed
7  him pictures and videos that Ricky later realized were pornographic. On the last occasion that
8  Ricky went to Hernandez's house, Hernandez first took off Ricky's pants and underwear, then
9  pushed Ricky into a closet and pulled out his own (Hernandez's) "private part"; Ricky said no, and
10 tried to run; and Hernandez told Ricky not to tell his parents because they would be angry and Ricky
11 would get in trouble.

12       Joey V. ("Joey"), Ricky's younger brother, testified that in May 1987, when he was six years
13 old, he accompanied Ricky and their other brother to the home of someone who gave them candy
14 and soda. Joey did not remember anything else that happened at the house. Joey recalled talking to
15 the police about it, but he could not remember any details.

16       Police Officer Charles Guitron investigated Hernandez in May 1987. Officer Guitron
17 testified that he interviewed Joey, who said that Hernandez gave Joey a quarter and pulled down
18 Joey's pants. Herndandez showed Joey pictures of other children and told Joey to come back.

19 **II. PROCEDURAL BACKGROUND**

20       Hernandez was charged by an Information that alleged two counts of committing a lewd act
21 on a child under the age of fourteen in violation of California Penal Code § 288(a)) – one count
22 arising out of Hernandez's touching of Jane on June 27, 1999 and the second count arising out of his
23 touching of Jane on June 28, 1999. Clerk's Transcript ("CT") 20-23. The Information also alleged
24 three prior convictions of § 288(a) arising out of Hernandez's 1987 touching of Ricky and Joey. *Id*.
25 Two of the priors were charged under California's Three Strikes law (Cal. Pen. Code § 1170.12), all
26 three priors were charged under California' One Strike law (Cal. Pen. Code § 667.71(d)), and all
27 three priors were charged as five-year enhancements (Cal. Pen. Code § 667.51(a)). *Id*.
28       On December 10, 1999, a jury trial commenced in the Contra Costa County Superior Court.

3

Case No. 5:05-cv-02993-RMW
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

CT 48. On December 15, 1999, a jury found Hernandez guilty of both charged counts and it also found true the three alleged prior convictions. CT 100. On January 27, the Superior Court sentenced Hernandez to a total term of imprisonment of sixty-five years to life, comprising an aggravated term of twenty-five years to life on count 1, an aggravated term of twenty-five years to life on count 2, and a term of five years for each of the three enhancements, all terms to run consecutively. CT 134-35.

Hernandez filed both a direct appeal and a habeas petition in the California Court of Appeal. On February 6, 2004, the Court of Appeal issued an unpublished opinion affirming the conviction and denying habeas relief. *People v. Hernandez*, Case Nos. A090177, A102598, 2004 WL 541176, at *11 (Cal. App. 1st Dist. Feb. 6, 2004). On April 28, 2004, the California Supreme Court summarily denied review as to both the direct appeal and the habeas petition. Exs. 16, 17. Hernandez's conviction became final ninety days later, on July 27, 2004. *See Zepeda v. Walker*, 581 F.3d 1013, 1016 (9th Cir. 2009). Hernandez timely filed the present habeas petition on July 22, 2005. ECF No. 1. He asserts the following claims: (1) the trial court deprived him of due process when it admitted propensity evidence pursuant to California Evidence Code § 1108; (2) the trial court deprived him of due process by admitting propensity evidence without giving appropriate consideration to its prejudicial effect; (3) trial counsel provided ineffective assistance by failing to seek bifurcation of the allegations of Hernandez's prior convictions or to advise Hernandez to admit them; (4) trial counsel provided ineffective assistance by failing to present impeachment evidence and make objections that would have undermined testimony relating to Hernandez's prior sex offenses against Ricky and Joey; (5) the prosecution deprived him of due process by failing to disclose material impeachment evidence; (6) the prosecution deprived him of due process by knowingly using false testimony; and (7) trial counsel provided ineffective assistance by failing to discover material impeachment evidence. All of these claims were presented to the California Court of Appeal either in Hernandez's direct appeal or in his habeas petition. *See Hernandez*, 2004 WL 541176, at *1 (summarizing arguments presented on direct appeal and in habeas petition).

### III. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the extent

4

1  of federal review for habeas petitions that, like Hernandez's, were filed after April 24, 1996. *See*
2  *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir. 2011). "AEDPA establishes a highly deferential
3  standard for reviewing state court determinations for constitutional error." *Id*. A court is required to
4  deny habeas relief unless the petitioner shows that adjudication of his or her claims in the state
5  courts "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
6  clearly established Federal law, as determined by the Supreme Court of the United States; or (2)
7  resulted in a decision that was based on an unreasonable determination of the facts in light of the
8  evidence presented in the State court proceeding." *Musladin v. Lamarque,* 555 F.3d 830, 834 (9th
9  Cir. 2009) (citing 28 U.S.C. § 2254(d)).

10     "A state court decision will be 'contrary to' federal law if it 'applies a rule that contradicts
11 the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially
12 indistinguishable from' a Supreme Court case yet reaches a different result." *Id.* (quoting *Williams*
13 *v. Taylor*, 529 U.S. 362, 405-06 (2000)). "It will involve an 'unreasonable application of' federal
14 law only if it is 'objectively unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409). The state
15 court decision tested under these standards is the decision of the highest state court to provide a
16 reasoned decision on the merits. *Id.* at 834.

17     Even when a constitutional error is found, a court must assess the prejudicial impact of the
18 error under the standards set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Merolillo*, 663
19 F.3d at 454. "Habeas relief is warranted only if the error had a 'substantial and injurious effect or
20 influence in determining the jury's verdict.'" *Id*. (quoting *Brecht*, 507 U.S. at 637-38).

21 **IV. DISCUSSION**

22 **A.    Due Process - California Evidence Code § 1108 (Claim 1)**

23     As noted above, Hernandez had three prior convictions for lewd acts on a child under the age
24 of fourteen in violation of California Penal Code § 288(a). Those convictions arose from
25 Hernandez's 1987 conduct with Ricky and Joey. Over Hernandez's objection, the trial court
26 admitted evidence of those priors pursuant to California Evidence Code § 1108.

27     California Evidence Code § 1101 prohibits admission of "evidence of a person's character or
28 a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence

5

of specific instances of his or her conduct) . . . when offered to prove his or her conduct on a specified occasion." Cal. Evid. Code § 1101(a). However, § 1101 contains an explicit exception for evidence admitted pursuant to § 1108. *Id*. Section 1108 provides in relevant part that: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Cal. Evid. Code § 1108(a). Section 352 in turn provides that: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid. Code § 352.

Hernandez claims that the admission of prior sex offenses pursuant to § 1108 constitutes a *per se* denial of due process. The California Court of Appeal[3] rejected this claim, pointing out that it was bound by the California Supreme Court's contrary determination in *People v. Falsetta*, 21 Cal.4th 903 (1999). *Hernandez*, 2004 WL 541176, at *6. In *Falsetta*, the court noted that "[b]y their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence." *Id*. at 915. The court concluded that § 1108 helps the trier of fact make credibility determinations by giving him or her "the opportunity to learn of the defendant's possible disposition to commit sex crimes." *Id*. Observing that § 1108 is limited expressly by § 352, which permits the trial court to exclude evidence that is too time-consuming, confusing, or prejudicial, the court opined that, "[i]n summary, we think the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge." *Id*. at 917.

Hernandez argued on appeal that *Falsetta* had been undermined by a subsequent Ninth Circuit case, G*arceau v. Woodford*, 275 F.3d 769 (9th Cir. 2001) ("*Garceau II*"). The appellate court was not persuaded, commenting that "[n]ot only has *Garceau II* been reversed by the United States Supreme Court in *Garceau III*, albeit on procedural grounds, but more importantly, *Garceau*

---

[3] As noted above, the California Supreme Court summarily denied Hernandez's petitions for review. Thus the Court of Appeal is the highest state court to provide a reasoned decision on the merits.

6

*II* did not involve a state statute, such as Evidence Code section 1108, *expressly permitting* other crimes to be considered as evidence of propensity." *Hernandez*, 2004 WL 541176, at *7. The appellate court also distinguished *Garceau II* on its facts. *Id*. The Court of Appeal concluded, "[t]hus, in our view, nothing in *Garceau II* casts doubt on the conclusion reached by our Supreme Court in *Falsetta, supra*, 21 Cal.4th 903, that Evidence Code section 1108 passes constitutional muster." *Hernandez*, 2004 WL 541176, at *7.

Hernandez has not identified, and this court has not discovered, any Supreme Court case holding that admission of prior offenses under a state statute such as § 1108 necessarily renders the trial so unfair as to constitute a deprivation of due process. To the contrary, "[t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "[I]t has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id*. Accordingly, Hernandez has failed to demonstrate that the appellate court's rejection of his due process challenge to § 1108 was contrary to, or an unreasonable application of, Supreme Court authority.

**B.     Due Process - Prejudicial Effect Of Propensity Evidence (Claim 2)**

Hernandez claims that even if § 1108 itself is constitutional, the trial court deprived him of due process by admitting propensity evidence without giving appropriate consideration to its prejudicial effect as required under § 352 and without weighing all of the factors mandated by *Falsetta*. *Falsetta* offers guidance on the process by which courts should apply § 352 to prior sex offenses: "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." *Falsetta*, 21 Cal.4th at 917.

7

The Court of Appeal made a factual determination that the trial court did carefully consider the factors outlined in § 352 and discussed in *Falsetta*. *Hernandez*, 2004 WL 541176, at *7. The appellate court quoted extensively from the trial transcript, setting forth the trial court's reasoning for admitting evidence of Hernandez's priors. *Id*. at *7-8. The trial court had expressed concern that the prosecution wished to introduce multiple prior sex offenses and that some of those offenses never had been charged. *Id*. at 8. The court concluded that the "sheer number" of prior sex offenses in question might prove prejudicial, and that with respect to the prior uncharged sex offenses "the jurors would want him to be punished because the defendant was not previously punished." *Id*. The trial court resolved these concerns as follows: "So the weighing process required to be done under section 352 leads me to believe that exercising my sound discretion would mandate that I exclude the uncharged priors for which there are no convictions." *Id*.

Based upon this record, the appellate court rejected Hernandez's argument that the trial court "misunderstood its duty under *Falsetta* and Evidence Code section 352, and that the court failed to consider all of the factors required by *Falsetta*." *Id*. The appellate court went on to opine that: "We interpret the [trial] court's statements as indicating a clear understanding of its section 352 duties, as explained in *Falsetta*. . . . we decline to hold that a trial court must recite the entire litany of *Falsetta* factors on the record in order to demonstrate that it has properly exercised its discretion." *Id*.

Hernandez again argues that the trial court failed to consider all of the factors listed in *Falsetta* and failed to appreciate the prejudicial effect that admission of the prior convictions would have on what Hernandez described as an otherwise weak case against him. These arguments fail to demonstrate that the Court of Appeal's contrary finding "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Musladin v. Lamarque,* 555 F.3d at 834 (citing 28 U.S.C. § 2254(d)). Nor has Hernandez identified a United States Supreme Court case suggesting that a trial court must recite a particular litany of reasons for its evidentiary rulings. Accordingly, he has failed to demonstrate that the Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law.

**C.  Ineffective Assistance - Failure To Bifurcate Or Admit Priors (Claim 3)**

Hernandez claims that his trial counsel provided ineffective assistance by failing to seek

8

bifurcation of the allegations of Hernandez's prior convictions or to advise Hernandez to admit them. A claim of ineffective assistance of counsel requires a showing both that counsel's performance was deficient and that the deficiency resulted in prejudice to the defendant. *Hurles v. Ryan*, 706 F.3d 1021, 1030 (9th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Establishing deficient performance "requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms." *Id*. Establishing prejudice requires a showing of "a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hurles*, 706 F.3d at 1031 (quoting *Strickland*, 466 U.S. at 694).

The standards established by *Strickland* and by the AEDPA "are both highly deferential, and when the two apply in tandem, review is doubly so." *Id*. (internal quotation marks and citation omitted). When a federal habeas petitioner presents a claim of ineffective assistance, the district court must determine whether the state court's application of *Strickland* was unreasonable, *not* whether counsel's performance fell below the *Strickland* standards in the first instance. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair minded jurists could disagree on the correctness of the state court's decision." *Id*. (internal quotation marks and citation omitted).

The Court of Appeal observed that the trial court engaged counsel in extensive discussion about how best to handle Hernandez's prior sex offense convictions. *Hernandez*, 2004 WL 541176, at *4. It was agreed that the jury would be advised that there were three special allegations that Hernandez had sustained three prior convictions of § 288(a), that the jurors would be required to decide the truth of those allegations, and that everything would be handled in one proceeding without bifurcation. *Id*. As the trial court noted expressly, that meant "that there would be no mention of three strikes, no mention of habitual California sex offender, no mention of sentencing enhancements, no mention of anything other than the special allegations that the defendant had sustained each of these three convictions." *Id*. The Court of Appeal concluded that in light of the trial court's admission of the priors under § 1108, trial counsel "made a reasoned tactical decision to allow the jury to learn about the prior convictions and the fact that Hernandez had served a prison

9

term for those priors." *Id*. The appellate court noted that trial counsel "also made sure that the jury would not be informed that the finding on the priors involved the three strikes law or habitual offender enhancements." *Id*. In any event, the appellate court reasoned, trial counsel's strategy did not prejudice Hernandez, because the trial court already had ruled that Ricky and Joey could testify; thus the jury was going to hear about the prior sex offenses. *Id*. at 5. The Court of Appeal opined that "[l]earning that Hernandez had already been convicted and punished for those offenses served to lessen the prejudicial impact of that evidence." *Id*.

    Hernandez does not attack the state appellate court's determination at all. Instead, he makes several arguments in support of his contention that trial counsel's representation fell below the *Strickland* standards. As discussed above, the task before this court is not to determine in the first instance whether trial counsel's performance fell below the *Strickland* standards in the first instance; instead, the court must determine whether the state court's application of those standards was unreasonable. Clearly, it was not. The Court of Appeals cited *Strickland* and correctly summarized the standards set forth therein, discussed the deficiency and prejudice prongs, and explained its reasons for finding that neither prong was satisfied. *Id*. at 4-5. Hernandez has not presented any basis for concluding that this application of *Strickland* was so unreasonable that no fair minded jurist could find it to be correct. *See Hurles*, 706 F.3d at 1031.

**D.     Ineffective Assistance - Failure To Attack Propensity Evidence (Claim 4)**

    Hernandez claims that trial counsel provided ineffective assistance by failing to utilize all possible means for undermining the propensity evidence relating to Hernandez's prior sex offenses against Ricky and Joey. With respect to Ricky, Hernandez asserts that trial counsel should have brought out the fact that Ricky had been convicted of aggravated assault. According to Hernandez, trial counsel could have impeached Ricky with the fact that aggravated assault is an offense involving moral turpitude. Alternatively, trial counsel could have cross-examined Ricky about the acts upon which the conviction was based, and in particular the fact that Ricky bit off a chunk of the victim's ear during the course of the assault. Hernandez argues that undermining Ricky's credibility was critical, and that trial counsel's failure to take every opportunity to do so fell below the *Strickland* standards.

10

1   The Court of Appeal rejected this argument, concluding that even if it were to assume that Ricky's testimony played a significant role in the jury's decision to convict Hernandez, "we do not think it is reasonably probable that placing greater emphasis on [Ricky's] conviction would have changed the result." *Hernandez*, 2004 WL 541176, at *11. The appellate court reasoned that because the jury was informed that Hernandez had been convicted of the offense about which Ricky testified, "it is unlikely that any amount of cross-examination about [Ricky's] own criminal history would have led the jury to believe he was lying about what Hernandez did to him when he was a child." *Id*. The appellate court also noted that Ricky admitted his conviction at start of his testimony and wore jail clothes while on the witness stand. *Id*. The court concluded that "[i]t is highly speculative whether the jury's opinion of his credibility would have been affected by hearing more detail about [Ricky's] crime, and they might well have been alienated if Hernandez's counsel had too vigorously cross-examined a prior victim of Hernandez's molestations about events that were collateral to the current case." *Id*. In summary, the appellate court found that "Hernandez's trial counsel's decision not to cross-examine [Ricky] in order to impeach him further with his assault conviction was tactically reasonable, and thus did not constitute ineffective assistance of counsel." *Id*. Moreover, the appellate court stated that it could not conclude that there was "a reasonable probability that the outcome would have been more favorable to Hernandez if his counsel had chosen to proceed differently." *Id*.

With respect to Joey, Hernandez asserts that trial counsel should have raised a hearsay objection to Officer Guitron's testimony that in 1987 Joey (then six years old) stated that Hernandez gave him a quarter and pulled down his pants. At the time of trial, Joey (then eighteen years old) testified that he could not remember what had happened to him at Hernandez's house, but that he remembered talking to the police and telling them the truth. *Hernandez*, 2004 WL 541176, at *5. The Court of Appeal concluded that Officer Guitron's testimony was admissible under the hearsay exception for past recollection recorded, as Officer Guitron took notes when speaking to Joey and reduced Joey's statements to writing. *Id*. The appellate court opined that "[c]ounsel may not be faulted for failing to make a pointless objection." *Id*. The court also pointed out that Hernandez had pled no contest to the charges arising out of his 1987 conduct based in part on Joey's statement, and

11

that fact was sufficient evidence of the statement's reliability to justify admission even if trial counsel had raised a hearsay objection.[4] *Id*.

Hernandez also takes issue with trial counsel's concession during closing argument that Hernandez committed the crimes against Ricky and Joey. Specifically, counsel told the jury: "Yes, he's done something horrible before to two boys," and "[h]e did something bad back in 1987 to those boys. No question about it." *Hernandez*, 2004 WL 541176, at *6. Counsel also told the jury that Hernandez's conduct with Ricky and Joey "shows he has a propensity to do these things to Jane Doe." *Id*. However, counsel also told the jury that they needed to find guilt beyond a reasonable doubt: "Not suspicion. Not conjecture. Not that you want to punish him for something that he's already been punished for in the past. Not that it's likely or possible that maybe something happened between him and Jane Doe. But you must be totally convinced beyond a reasonable doubt." *Id*.

The Court of Appeal concluded that trial counsel's argument "reasonably attempted to ensure that the jury was not going to convict Hernandez based on the prior offenses by emphasizing that he had already been punished for those crimes." *Id*. The appellate court also concluded that "[i]t was also reasonable for counsel to admit that the prior offenses were admissible for propensity in the course of reminding the jury that this did not absolve the prosecution from proving every element in the charged offense beyond a reasonable doubt." *Id*.

Although Hernandez argues that the Court of Appeal's reasoning was faulty on these points, and that in fact trial counsel's representation was deficient and prejudicial, he does not argue that the Court of Appeal's contrary determinations on these points constituted an *unreasonable* application of *Strickland*. The appellate court summarized *Strickland* accurately, discussed the deficiency and

---

[4] Hernandez asserts that even if the trial court had overruled a hearsay objection, trial counsel could have argued that admission of Joey's statement via Officer Guitron's testimony deprived Hernandez of his right of confrontation. This argument is not addressed in the Court of Appeal's decision and it is not clear if Hernandez raised the argument in the state court proceedings. In any event, Hernandez himself concedes that Ricky's testimony was the more damaging of the two brothers, *see* Pet. at 45, ECF No. 1, and as discussed herein the appellate court's rejection of Hernandez's ineffective assistance claim relating to Ricky's testimony did not constitute an unreasonable application of *Strickland*. Thus even if the Court were to assume that the argument relating to the confrontation clause properly is before it and that the deficiency prong is met, the Court could not conclude that the prejudice prong is met with respect to that argument given the record as a whole.

12

United States District Court
For the Northern District of California

1 prejudice prongs, and explained its reasons for finding that neither prong was satisfied. Even if it
2 were to conclude that any part of that reasoning was incorrect, this court could not conclude that the
3 appellate court's application of *Strickland* was so unreasonable that no fair minded jurist could find
4 it to be correct. *See Hurles*, 706 F.3d at 1031.

**E.     Due Process – Prosecution's Failure To Disclose Impeachment Evidence (Claim 5)**

"Long-established Supreme Court precedent holds that the prosecution must turn over exculpatory evidence to the defense." *Milke v. Ryan*, 711 F.3d 998, 1005 (9th Cir. 2013). "This doctrine applies to impeachment evidence as well." *Id*. Hernandez claims that the prosecution deprived him of due process by failing to disclose evidence that could have been used to impeach Ricky. Ricky testified that he was not receiving any benefit with respect to his own criminal conviction as a result of testifying in Hernandez's case. *Hernandez*, 2004 WL 541176, at *8. Ricky stated that he was testifying because Hernandez's actions had stayed in his mind for the past ten or twelve years and made him unable to trust any man, not even his own father and brothers. *Id*. Hernandez contends that Ricky actually testified in return for a reduction in his sentence and that the prosecution suppressed this fact.

During Hernandez's trial, the prosecution disclosed that Ricky's sentence was going to be reduced from two years in state prison to 364 days in county jail as part of a negotiated disposition of Ricky's pending habeas petition. *Id*. at *9. The prosecution represented that the deal was the result of the fact that a witness necessary to oppose Ricky's habeas petition was located in Mexico. *Id*. Ricky's habeas petition was based upon the alleged ineffective assistance provided by Ricky's public defender in failing to advise him that a plea of guilty to the assault charge would have immigration consequences. Hernandez argues that the public defender necessarily was the key witness with respect to Ricky's ineffective assistance claim, and the public defender was not in Mexico when the disposition of Ricky's habeas petition was negotiated. Hernandez infers from these facts that the prosecution was lying about the reason Ricky was offered a reduction in sentence, and that in fact Ricky was offered a reduction in sentence in return for testifying against Hernandez.

In rejecting this claim, the Court of Appeal noted that although Ricky's public defender was

13

Case No. 5:05-cv-02993-RMW
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

*a* key witness with respect to Ricky's habeas petition, she "was not, however, the *only* witness whose presence or absence was relevant to the prosecution's decisionmaking process regarding how to respond to [Ricky's] habeas." *Hernandez*, 2004 WL 541176, at *10. Ricky had pled guilty to a charge of aggravated assault arising out of an incident in which he bit off a portion of another man's ear. *Id*. The victim of the assault was in Mexico. *Id*. The appellate court concluded that "[t]he prosecution could reasonably have been concerned about its inability to call the victim as a witness in the habeas proceeding." *Id*. The court also noted that the victim's unavailability would impair the prosecution's ability to show that even if the public defender had not advised Ricky adequately about the immigration consequences of a guilty plea, no prejudice resulted because Ricky faced a substantial prison sentence if the case went to trial. *Id*. "Moreover," the court reasoned, "had [Ricky's] habeas been successful – a possibility that the prosecution was not free to dismiss lightly – the prosecution could have been faced with the need to try Ricky on the underlying charges without being able to call the victim as its star witness." *Id*. The Court of Appeal declined to "second-guess the prosecution's discretionary decision that in the absence of the victim, the best use of the office's resources was to offer [Ricky] a plea bargain." *Id*.

Hernandez offers eighteen pages of argument with respect to this claim, but all of it boils down to pure speculation that the prosecution secretly agreed to reduce Ricky's sentence in return for his testimony and concealed this fact from Hernandez's trial counsel. The Court of Appeal clearly understood what inference Hernandez wished it to draw from the evidence, and it simply declined to draw that inference. Even if it were to conclude that such an inference *could* be drawn from the evidence in the record, this court could not conclude that the appellate court's contrary finding was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Musladin,* 555 F.3d at 834.

**F.     Due Process – Prosecution's Use Of False Testimony (Claim 6)**

"A defendant's due process rights are violated when a conviction is obtained through the knowing use of false testimony." *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013). Hernandez claims that the prosecution knowingly elicited false testimony when it permitted Ricky to testify that he was not receiving any benefit in return for his testimony against Hernandez. As discussed above,

14

Hernandez claims that the prosecution in fact knew that Ricky was testifying in return for a reduction in his sentence. The Court of Appeal rejected Hernandez's false testimony claim in light of its determination that Hernandez had failed to show that the prosecution had offered Ricky a reduction in sentence in return for his testimony. *Hernandez*, 2004 WL 541176, at *10. In light of its conclusion that the latter determination was not unreasonable, this court necessarily must conclude that the appellate court's rejection of Hernandez's false testimony claim likewise was not unreasonable.

**G.     Ineffective Assistance – Failure To Discover Plea Deal (Claim 7)**

Finally, Hernandez claims that his trial counsel rendered ineffective assistance when he failed to investigate and discover Ricky's true motives for testifying (the reduction in sentence). The Court of Appeal concluded that "if there was no secret deal to reward [Ricky] for his testimony, Hernandez's trial counsel cannot have been ineffective in failing to discover it." *Hernandez*, 2004 WL 541176, at *10. In light of its conclusion that the appellate court's rejection of Hernandez's secret deal theory was not unreasonable, this court necessarily must conclude that the appellate court's rejection of this ineffective assistance claim likewise was not unreasonable.

## V. CONCLUSION

Hernandez's briefing largely is devoted to establishing that *in fact* he was deprived of due process and effective assistance of counsel. However, this court's task is not to decide in the first instance whether Hernandez suffered the alleged deprivations. Instead, the court must decide whether the *appellate court's* rejection of Hernandez's claims was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the record. *See Musladin,* 555 F.3d at 834. Under the highly deferential standards applicable here, *see Merolillo*, 663 F.3d at 453, the court answers this question in the negative. Accordingly, Hernandez's petition for writ of habeas corpus is DENIED.

## VI. CERTIFICATE OF APPEALABILITY

A district court that issues an order denying a habeas petition must either grant or deny a certificate of appealability. Rule 11, 28 U.S.C. foll. § 2254. For the reasons discussed above, the court concludes that Hernandez has not shown that "jurists of reason would find it debatable

15

whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, the court declines to grant a certificate of appealability.

IT IS SO ORDERED.

DATED: September 26, 2013



RONALD M. WHYTE
United States District Judge